IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HAMILTON & COMPANY, CERTIFIED PUBLIC ACCOUNTANTS, a Montana Corporation; MANHATTAN MIDTOWN LLP, a Montana LLP; MONTANA HISTORICAL RESEARCH LIBRARY INC., a Montana Corporation; THREE FORKS APARTMENTS LLP, a Montana LLP; STEVEN S. HAMILTON, and ROBIN H. HAMILTON, <br><br> Plaintiffs, <br><br> vs. <br><br> MONTANA RAIL LINK, INC., a Montana Corporation; THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY; and DOES 1-10, <br><br> Defendants. | CV 16-31-BU-BMM-JCL <br><br><br> FINDINGS AND RECOMMENDATION |

Before the Court is Defendant Montana Rail Link's motion requesting the

Court dismiss this action as barred by the defense of federal preemption. In

response, Plaintiffs argue federal original jurisdiction does not exist to support

Montana Rail Link's removal of this action and the action must be remanded.

Having analyzed the issues raised by the parties' respective arguments, it is

recommended the action be remanded to the Montana Eighteenth Judicial District Court, Gallatin County.

I.   **Background**

On March 6, 2014, flood waters rose in the area south of Manhattan, Montana, and began flowing north.  When the water reached Manhattan it pooled in an area of town known as Railroad Park.

Defendants Montana Rail Link and Burlington Northern and Santa Fe Railway Company operate the main railroad line which borders the northern side of Railroad Park.  East Main Street borders the southern side of Railroad Park.

Plaintiffs allege Defendants own, operate, and maintain both the main rail line property and Railroad Park.  Plaintiffs complain that prior to the subject flooding Defendants, and other responsible parties, engaged in design, construction, and maintenance work in and around Railroad Park and the main rail line which left Railroad Park with a non-functional system for the drainage of water out of the Park.  Additionally, over time Defendants had built up the railroad bed resulting in a more compact and higher barrier to water drainage on the northern side of Railroad Park.

Plaintiffs contend the Defendants' construction of the main rail line coupled with the insufficient drainage system in Railroad Park caused the 2014 flood

waters to flow from Railroad Park to the south across East Main Street damaging properties owned by Plaintiffs.

Plaintiffs allege Defendants owed a reasonable duty of care to maintain their water drainage systems in Railroad Park, and to prevent water from flooding out of Railroad Park towards Plaintiffs' properties. Also, they contend Defendants were obligated to construct and maintain their rail line property in a reasonably safe manner so as not to cause harm to the public and neighboring property owners. They allege Defendants are liable for negligence, and for violating Plaintiffs' right to a clean and healthful environment protected under the Montana Constitution. Mont. Const. art. II, § 3. Plaintiffs request an award of compensatory damages.[1]

## II.     Procedural Background

On March 4, 2016, Plaintiffs commenced this action in the Montana Eighteenth Judicial District Court, Gallatin County, Montana. On June 15, 2016, Montana Rail Link removed the case under authority of 28 U.S.C. §§ 1441(a) and

---

[1]This summary of Plaintiffs' allegations is prepared based on their original complaint filed in state court. Although Plaintiffs filed an amended complaint on August 25, 2016 (doc. 25), because Plaintiffs assert Montana Rail Link's removal to this Court fails for lack of jurisdiction the relevant pleading is that which was filed at the time of removal. *Provincial Government of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1085 n.1 (9th Cir. 2009).

1446.  It asserted this Court possesses original jurisdiction over Plaintiffs' claims because the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101, *et seq.* (Termination Act) completely preempts claims advanced under state law which pertain to a railroad company's design, construction, or operation of a railroad.  (Doc. 1 at 3.)

After removal Montana Rail Link filed its motion to dismiss all of Plaintiffs' claims for relief based on defensive preemption under the Termination Act.  In response, Plaintiffs assert Montana Rail Link's defense does not confer federal original jurisdiction, and they argue no other basis for jurisdiction exists.

For the reasons discussed, the Court agrees Montana Rail Link has not established this Court possesses original jurisdiction over Plaintiffs' claims advanced in the Plaintiffs' state court complaint.  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. §1447(c).  *Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013).  Therefore, this case is subject to remand.

## III.   Discussion

### A.    Complete Preemption - The Jurisdictional Doctrine

A defendant may remove an action filed in state court if the "district courts of the United States have original jurisdiction" over the action.  28 U.S.C. §

1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, some form of federal original jurisdiction, such as federal question jurisdiction (28 U.S.C. § 1331), or diversity of citizenship jurisdiction (28 U.S.C. § 1332), must exist. *Id; Hunter v. Philip Morris USA*, 583 F.3d 1039, 1042 (9th Cir. 2009).

The Ninth Circuit strictly construes section 1441(a) against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). There exists a strong presumption that a cause of action lies outside the limited jurisdiction of the federal court. *Hunter*, 583 F.3d at 1042. Therefore, the removing defendant always bears the burden of establishing original jurisdiction exists. *Gaus*, 980 F.3d at 566.

The existence of federal question jurisdiction over a state court action is governed by the well-pleaded complaint rule which provides "that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, at 392. A suit arises under federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]" (*Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (citation and quotation omitted), and "affirmatively allege[s] a federal claim." *Beneficial National Bank v. Anderson* 539 U.S. 1, 6 (2003). Thus, a

plaintiff may "avoid federal jurisdiction by exclusive reliance on [a claim advanced under] state law." *Caterpillar*, at 392.

The well-pleaded complaint rule does not permit removal of a state court action based solely upon a federal defense. *Retail Property Trust v. United Brotherhood of Carpenters and Joiners of America*, 768 F.3d 938, 946-47 (9th Cir. 2014) (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63 (1987)). The federal defense of preemption does not confer jurisdiction. *Caterpillar*, at 393; *Dennis*, 724 F.3d at 1253-54. This is so "even if the [federal] defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 14 (1983).

Here, applying the well-pleaded complaint rule, the Court finds Plaintiffs have strictly pled only a claim of negligence under Montana common law, and a violation of the Montana Constitution. Plaintiffs' complaint does not assert a federal claim or federal cause of action, thereby subjecting this action to remand for lack of jurisdiction to allow the state court to resolve Montana Rail Link's defense of federal preemption. *See Vaden*, 556 U.S. at 60; *Retail Property Trust*, 768 F.3d at 947.

But a federal court must also consider the artful pleading doctrine – a corollary to the well-pleaded complaint rule. *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003). The doctrine prohibits a plaintiff from recharacterizing what is actually a federal cause of action as a state law claim – a plaintiff may not "artfully phrase[] a federal claim by dressing it in state law attire." *Id*. at 1041. Thus, a federal court may find federal question jurisdiction exists where a state law claim is only cognizable as a federal cause of action. *Id*. at 1040-41.

The artful pleading doctrine applies in very limited circumstances. The doctrine has been employed only in "complete preemption" cases (referring to the jurisdictional doctrine of complete preemption), and in substantial federal question cases. *Lippitt*, 340 F.3d at 1041.

The occurrence of complete preemption for jurisdictional purposes is rare. *Retail Property Trust*, 768 F.3d at 947. It has been found only in the application of a few limited federal laws: (1) the Labor Management Relations Act; (2) the Employee Retirement Income Security Act; and (3) the National Banking Act which provides the exclusive cause of action for a plaintiff's state law usury claim. *Lippitt*, 340 F.3d at 1042 (citing *Beneficial National Bank v. Anderson* 539 U.S. 1, 7-8, 10-11 (2003)).

Complete preemption arises only when a federal statute has such "extraordinary" preemptive force that it "converts an ordinary state common-law complaint into one stating a federal claim[.]" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (quotation and citation omitted). Such a claim under "state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id*. But significantly, this jurisdictional doctrine of complete preemption is constrained by the requirement that federal question jurisdiction may exist only where federal law converts a state law cause of action into one stating a federal claim. *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-65 (1987).

To be sure, in the context of removal jurisdiction analysis the Ninth Circuit clearly identifies complete preemption as a jurisdictional doctrine, not to be confused with a preemption defense doctrine. *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013). Complete preemption jurisdiction applies only where Congress intended a federal law to "replace" or "supplant" a state law cause of action with a federal cause of action which may then be removed to, and proceed in, federal court. *Id*. *See also Beneficial National Bank*, 539 U.S. at 11. Where there exists "no federal cause of action for plaintiffs' [state law] claims," i.e. where state law claims are "not cognizable as federal claims[,]" complete preemption

jurisdiction does not exist and a state court action may not be removed to federal court under 28 U.S.C. § 1441(a).  *Dennis*, 724 F.3d at 1254.  *See also Lippitt*, 340 F.3d at 1042.

Courts must maintain this analytical distinction between complete preemption as a jurisdictional doctrine, and the various forms of defensive or ordinary preemption.  *See Retail Property Trust*, 768 F.3d at 948.  Defensive preemption exists in three forms:  express preemption, field preemption, and conflict preemption.  *Id*.  But these forms of preemption are defensive doctrines only, not grounds for removal jurisdiction.  *Id*.

The defense of field preemption tends to blur the necessary analytical distinction.  The confusion arises, in significant part, because courts unfortunately and "casually" describe the defense of field preemption as complete preemption – courts frequently, but incorrectly, equate the two phrases when assessing jurisdiction.  *Retail Property Trust*, 768 F.3d at 948-49 (citing cases).  The confusion occurs because both phrases are used to describe the breadth of a federal statutory scheme, or the extent to which federal law occupies a field.  *Id*. at 949.  But significantly, as distinct doctrines the two "are not co-extensive."  *Id*.

In accordance with the foregoing complete preemption jurisdictional analysis, Plaintiffs argue jurisdiction over this action does not exist under the

Termination Act as is necessary to support removal of this action. They contend

Montana Rail Link advances only theories of defensive preemption. And they

contend Montana Rail Link has failed to identify and establish any provision of

the Termination Act which converts Plaintiffs' state law claims into a federal

cause of action cognizable in federal court for purposes of the complete

preemption jurisdictional doctrine. The Court agrees.

## B.     Montana Rail Link Relies Upon Defensive Preemption

Montana Rail Link's motion to dismiss is entirely predicated upon defensive

preemption, not the jurisdictional doctrine of complete preemption. With the

exception of one case – *Elam v. Kansas City Southern Railway Company*, 635

F.3d 796 (5th Cir. 2011) – the other cases to which Montana Rail Link cites in

support of its preemption argument under the Termination Act primarily address

only the issue of defensive preemption. (Doc. 7 at 4-9.) Suffice it to say that the

cited cases are all either:

> (1) not removal cases and, therefore, the jurisdictional grounds for removal
> under the Termination Act were not at issue (*see e.g. Jones Creek Investors,*
> *LLC v. Columbia County, Georgia*, 98 F. Supp. 3d 1279 (S.D. Ga. 2015)),
>
> (2) cases where removal jurisdiction was improvidently grounded upon
> defensive preemption under 49 U.S.C. § 10501(b),[2] not the proper complete

---

[2]That section 10501(b) primarily addresses defensive preemption, not
jurisdictional complete preemption, is discussed *infra* at 15-17.

preemption jurisdictional analysis required under Ninth Circuit law, and were dismissed based on defensive preemption under the Termination Act (*see e.g. B&S Holdings, LLC v. BNSF Railway Company*, 889 F. Supp. 2d 1252 (E.D. Wash. 2012)), or

(3) were cases removed based on diversity jurisdiction and dismissed based on defensive preemption under the Termination Act (*see e.g. Maynard v. CSX Transportation, Inc.*, 360 F. Supp. 2d 836 (E.D. Ky. 2004)).

Consequently, Montana Rail Link's preemption argument, if successful, would only support the dismissal of Plaintiffs' claims in state court, not the jurisdictional grounds for removal of this action to federal court. Absent jurisdiction, Montana Rail Link's defensive preemption arguments are not properly before the court.

Montana Rail Link cites to at least one case discussing the application of complete preemption under the Termination Act for removal jurisdiction purposes, but the case does not support removal jurisdiction over Plaintiffs' claims here. In *Elam*, supra, the court concluded jurisdiction existed to support the removal of the case. But significantly, the Court did so based, in part, upon principles of defensive preemption as discussed in *Friberg v. Kansas City Southern Railway Company*, 267 F.3d 439 (5th Cir. 2001) – a conclusion contrary to the law in the Ninth Circuit. *Elam*, 635 F.3d at 806-808. Furthermore, the court in *Elam* found that the Termination Act at 49 U.S.C. §§ 11701 and 11704(b) provided a federal

cause of action for the plaintiffs' claim, and that 28 U.S.C. § 1337(a) authorized original jurisdiction in federal court for those claims. *Id.*, at 808-809.

In its reply brief, Montana Rail Link again relies heavily upon principles of defensive preemption. It cites to cases which apply a defensive preemption analysis in assessing removal jurisdiction – an analysis which is incompatible with the Ninth Circuit's jurisdictional analysis under the complete preemption doctrine. (Doc. 29 at 8-11 of 21.) For example, Montana Rail Link cites to the removal jurisdiction analysis in *Rawls v. Union Pacific Railroad Company*, 2010 WL 892115 (W.D. Ark. 2010). But in that case, the court confused the defense of federal preemption with the jurisdictional doctrine of complete preemption, and it relied entirely upon the defensive preemption analysis in *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 224072 (E.D. La. 2009) (discussing only defensive preemption under the Termination Act in a case that was not removed from state court). *Rawls*, 2010 WL 892115 at *4-5. Consequently, the court concluded jurisdiction existed under the Termination Act based on defensive preemption, and it denied plaintiffs' motion to remand the case. *Rawls*, 2010 WL 892115 at *5. Again, the Ninth Circuit emphasizes that the courts must not confuse the proper jurisdictional analysis with defensive preemption. *Retail Property Trust*, 768 F.3d at 948-49.

Montana Rail Link further cites to language in *Staley v. BNSF Railway Company*, 2015 WL 860802 (D. Mont. 2015) discussing the preemptive force of the Termination Act for purposes of removal jurisdiction. The court recognized the Termination Act preempts state law claims which "have the effect of managing or governing rail transportation[,]" and claims "that impact how a railroad operates their lines." *Staley*, 2015 WL 860802 at 6 (quotations and citations omitted). In contrast, the court found the Termination Act does not preempt state laws "of general applicability that do not unreasonably interfere with interstate commerce[,]" or state laws that have only a "more remote or incidental effect on rail transportation." *Id*. Under that framework, the court found the plaintiff's negligence claims would not unreasonably burden BNSF's railroad operations, would not unreasonably interfere with interstate commerce, and would have "merely incidental" effects in BNSF's railroad operations. *Staley*, 2015 WL 860802 at *7. Therefore, it concluded the Termination Act did not completely preempt the plaintiffs' claims and it granted plaintiff's motion to remand the case to state court. *Id*., at *7-8.

But the Court finds the decision in *Staley* was based on an analysis of defensive preemption principles, not the jurisdictional doctrine of complete preemption. The *Staley* court's analysis relied heavily upon a discussion of

13

defensive preemption under the Termination Act as applied in other federal cases which were not cases removed from a state court and the cases did not discuss any jurisdictional authority under the Termination Act for removal jurisdiction purposes. *Staley*, 2015 WL 860802 at *6 (citing *Association of American Railroads v. South Coast Air Quality Management District*, 622 F.3d 1094 (9th Cir. 2009) (discussing defensive preemption under the Termination Act in a case that was not removed from state court), *City of Auburn v. United States Government*, 154 F.3d 1025 (9th Cir. 1998) (same), and *Friberg v. Kansas City Southern Railway Company*, 267 F.3d 439 (5th Cir. 2001) (same)). Finally, the *Staley* court relied heavily upon the decision in *Elam v. Kansas City Southern Railway Company*, 635 F.3d 796 (5th Cir. 2011). *Staley*, 2015 WL 860802 at *7. But as noted, *Elam* relied upon principles of defensive preemption incongruent with the proper jurisdictional analysis under Ninth Circuit law.

Based on the foregoing, Montana Rail Link's asserted defense of federal preemption under the Termination Act is insufficient to confer jurisdiction in this removal action. The Court turns to address Montana Rail Link's arguments on complete preemption as a jurisdictional doctrine.

**C.**         **Complete Preemption Jurisdiction Does Not Exist for Plaintiffs' Claims Under the Termination Act**

The Termination Act abolished the Interstate Commerce Commission, created the Surface Transportation Board, and granted the Board jurisdiction over certain interstate rail functions and matters. *City of Auburn v. United States Government*, 154 F.3d 1025, 1028 n.3 (9th Cir. 1998). It substantially deregulated the railroad industry. *Association of American Railroads v. South Coast Air Quality Management District*, 622 F.3d 1094, 1096 (9th Cir. 2009). As a result, the primary focus of the federal government's retained regulatory authority is the regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers. *Griffioen v. Cedar Rapids and Iowa City Railway Company*, 785 F.3d 1182, 1191 (8th Cir. 2015) (citing 49 U.S.C. § 10101).

The Termination Act contains an express preemption provision which establishes the exclusive jurisdiction of the Surface Transportation Board. The statute states as follows:

(b) The jurisdiction of the Board over--

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or
> discontinuance of spur, industrial, team, switching, or side tracks, or
> facilities, even if the tracks are located, or intended to be located,
> entirely in one State,

> is exclusive.  Except as otherwise provided in this part, the remedies
> provided under this part with respect to regulation of rail transportation are
> exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

Montana Rail Link suggests section 10501(b) provides complete preemption jurisdiction over Plaintiffs' state law claims because they pertain to the design, construction, operation, or maintenance of a railroad, and they must be presented to the Surface Transportation Board.  (Doc. 7 at 4 (citing to 49 U.S.C. § 10701), and Doc. 29 at 7 of 21.)[3]  But this suggested basis for jurisdiction fails for several reasons.

Significantly, section 10501(b) is generally relevant only to the issue of defensive preemption under the Termination Act.  *See Association of American Railroads*, 622 F.3d at 1096-98, and *Griffioen*, 785 F.3d at 1190 (noting that

---

[3] Although Montana Rail Link cites to section 10701, that statute falls within a Chapter of Title 49, U.S.C., which governs railroad transportation rates.  The statute is titled:  "Standards for rates, classifications, through routes, rules, and practices." 49 U.S.C. § 10701.  The statute is irrelevant to Plaintiffs' negligence and constitutional claims for property damage, and Montana Rail Link makes no effort to suggest how the rate provisions of section 10701 provide a federal cause of action for those claims.

section 10501(b) may be a significant factor in determining the extent of ordinary or defensive preemption under the Termination Act). Thus, the language of section 10501(b) "does not vest original jurisdiction in the federal district court for the purpose of removal[]" and the complete preemption jurisdictional doctrine. *Shupp v. Reading Blue Mountain & Northern Railroad Company*, 850 F.Supp.2d 490, 501 (M.D. Pa. 2012). Section 10501(b) "does not address removal or explicitly provide for federal-question jurisdiction over all preempted state-law claims." *Griffioen*, 785 F.3d at 1190.

More specifically, and consistent with the proper complete preemption analysis under Ninth Circuit law, the Eighth Circuit found that section 10501(b) does not provide a federal cause of action to replace a plaintiff's state law claim. The Eighth Circuit confirmed as follows:

> The scope of complete preemption turns primarily on the provision [of federal law] creating the federal cause of action—not on an express preemption provision. It is the federal cause of action that ultimately supplants the state-law cause of action and effectuates complete preemption. [Citation omitted.] The exclusive, federal cause of action is "the hinge on which the door to the federal courthouse swings." [Citation omitted.] That is so because it is unlikely that Congress would have intended the [Termination Act] to allow removal of claims of a kind entirely outside the scope of the statute's causes of action.

*Griffioen*, 785 F.3d at 1190.

Montana Rail Link fails to advance any argument suggesting that the Eighth Circuit's analysis is flawed. Consequently, the Court concludes 49 U.S.C. § 10501(b) does not provide jurisdictional grounds supporting Montana Rail Link's removal of this case.

Montana Rail Link also suggests complete preemption should be found on the basis that Congress has traditionally, pervasively, and comprehensively regulated the entire railroad industry in the past. (Doc. 29 at 11 of 21.) But nothing in that history of significant railroad regulation "suggests that the need for national uniformity in railroad regulation is so powerful that it allows removal of state-law claims that fall completely outside the substantive scope of the federal regulatory scheme." *Griffioen*, 785 F.3d at 1192. Montana Rail Link's argument fails.

Furthermore, the substantive framework of the Termination Act does not encompass Plaintiffs' flood damage claims. Rather, as noted, that framework pertains only to economic matters concerning the business of railroad operations. Therefore, claims for property damage due to flooding predicated upon a railroad company's negligent maintenance of a rail line "do not fall within the scope of [the Termination Act's] substantive framework[]" for purposes of finding jurisdiction based on complete preemption. *Griffioen*, 785 F.3d at 1191.

18

Montana Rail Link has failed to identify any federal cause of action provided under the Termination Act that supplants Plaintiffs' state law claims and which may proceed in federal court. To the contrary, for the reasons discussed, the Court finds the Termination Act does not provide Plaintiffs with a federal cause of action.

The court's discussion in *Griffioen* exemplifies the proper analysis of state law claims for flood damage for purposes of removal jurisdiction under the Termination Act – an analysis that is consistent with the analytical framework required in the Ninth Circuit. In 2008 the Cedar River flowing through Iowa flooded, and the flood waters damaged the plaintiffs' properties. Plaintiffs sued various railroad companies in state court in Iowa alleging the companies were liable for the damages based on state law theories of negligence and strict liability. Specifically, the plaintiffs alleged the railroad companies failed to properly build and maintain railway bridges over the Cedar River, and negligently attempted to stabilize bridges by weighing them down with railcars filled with ballast, all of which conduct caused or exacerbated flooding on plaintiffs' properties. *Griffioen*, 785 F.3d at 1185. The railroad companies removed the case to federal court, and the plaintiffs moved to remand.

The court in *Griffioen* addressed the issue of whether the Termination Act provided a substitute federal cause of action for the plaintiffs' flood water damage claims predicated upon state law and concluded the Act did not. "The absence from the [Termination Act] of a substitute federal cause of action that would embrace the [plaintiffs'] claims leads us to conclude that Congress has not expressed the clear intent necessary to overcome the exceptionally strong presumption against complete preemption[.]" *Griffioen*, 785 F.3d at 1192. Therefore, the court remanded the case to state court.[4]

Here, the Court concludes the jurisdictional analysis in *Griffioen* provides the proper analysis for resolution of the jurisdictional issue in this case. As a result, removal of this case fails for lack of jurisdiction.

## IV.    Conclusion

Montana Rail Link has failed to establish that the Termination Act provides for complete preemption jurisdiction over Plaintiffs' state law claims. Specifically, it has failed to satisfy its burden to identify a federal cause of action

---

[4]The court in *Griffioen* noted the existence of administrative and civil causes of action under the Termination Act at 49 U.S.C. §§ 10702(2) and 11704(b) and (c). But the court explained those provisions were irrelevant and inapplicable to the plaintiffs' flood damage claims, and did not support a substitute federal cause of action for those claims. *Griffioen*, 785 F.3d at 1191. Here, the Court similarly finds those section are irrelevant to Plaintiffs' flood damage claims.

in the Termination Act that supplants Plaintiffs' claims. Instead, Montana Rail Link's arguments support only the defense of federal preemption under the Termination Act. Therefore, this case is subject to remand under 28 U.S.C. § 1447(c). Upon remand, the state court may properly resolve application of the defense of federal preemption asserted in this case, a matter about which this Court does not express any opinion. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 485 n.7 (1999).

Therefore, IT IS RECOMMEND this action be REMANDED due to lack of federal jurisdiction.

DATED this 31st day of January, 2017.

Jeremiah C. Lynch
United States Magistrate Judge